McKinney, J.
delivered the opinion of the court.
On the first count of the declaration in this case, which is in trover, the verdict cannot be maintained. The employment of the slave as wagoner, was not, we think, without the scope of the service for which he was hired; and consequently there was no conversion.
But on the second count, which is in case for negligence and want of due care and attention, on the part of the plaintiffs in error, in the treatment of said slave, by reason whereof he was lost to the owner, we think the recovery well warranted.
It appears from the proof, that on the first of January, 1847, the slave in question was hired to the plaintiffs in error “to work on the farm,” for one year. Some six or seven days prior to the 25th of February of the same year, the slave was taken ill. The disease was bronchitis accompanied with fever; of which he lingered, gradually becoming worse, until his death, which happened on the 21st of March ensuing. Shortly before this attack, the slave was seen driving a wagon and team; the day was extremely wet and cold, and he was clad in some old clothes, so far worn that his arms and legs, up to his knees, were wholly uncovered; he had neither overcoat, blanket, or other covering to protect him from the severe inclemency of the weather. On the 25th of February, a week after the illness of the slave, a physician, who chanced to be passing, was requested by an agent of the plaintiffs in error, to call and see said slave; he did so, and found him lying, on the floor on a blanket. The physician was not called again until the first of March, when he was sent for by Mr. Davie, one of the plaintiffs in error, to visit *269 said slave, and continued to visit him until his death. On this visit he found the slave much worse, and informed Mr. Davie that if he were not particularly attended to, he would die. But there was no one, at any time, to wait upon him, capable of nursing or attending to him; and whenever the physician visited him he found him unattended to. The physician thinks that with proper attention the slave would have recovered.
No exception has been taken to the charge of the court, and the case rests solely upon the facts.
If it were allowable for us, under the rule of this court, to scrutinize and weigh the evidence in any case, in order to ascertain whether the preponderance of proof was in favor of or against the verdict, the present is not a case in which it would be expected of us to do so with the most scrupulous exactitude. Putting aside all considerations of what was due to the slave himself as a rational being; shutting out all the sympathies of our nature on the score of his privations and sufferings; and looking only to the legal rights of the owner, in the property of the slave, we think no jury could have hesitated for a moment to find the verdict rendered in this cause. The necessary protection of the rights of the master, all other considerations out of view, demands that the hirer of a slave should be taught to understand that more is required of him than to exact from the slave the greatest amount of service, with the least degree of attention to his comfort, health, or even life. The law, as administered at this day, in most of the slave states, rigidly exacts from the hirer an observance of the duties of humanity; and that measure of care and attention to the comfort and welfare of the slave, that a master, of a just and humane sense *270 of duty, would feel it incumbent upon him to exercise in the treatment of his own servant. If the hirer fall short of this, his application to mitigate, or set aside, the finding of a jury, visiting upon him the penalty of his neglect, as it merits no favor, will find but little in the view of the court.
Judgment affirmed.